IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ASHLEY DONLEY,

       Plaintiff,

v.                                   Civil Action No. 5:14CV165
                                            (STAMP)

SALLIE MAE, INC.,
SLM CORPORATION,
NAVIENT CORPORATION and
NAVIENT SOLUTIONS, INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER DENYING THE
PLAINTIFF'S MOTION TO REMAND AND GRANTING THE DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO STAY THE CIVIL ACTION**

I.  <u>Background</u>

This civil action involves the collection of student debt that
the plaintiff owed the defendants. The plaintiff alleges that when
she became unable to pay her student loan payments, the defendants
engaged in a series of allegedly illegal methods of collection.
Count I claims that the defendants violated the West Virginia
Consumer Credit and Protection Act ("CCPA") by engaging in phone
calls, correspondence, and other methods to contact the plaintiff
concerning her delinquent payments. Count II alleges that the
defendants violated the West Virginia Computer Crime and Abuse Act
("CCAA") by using electronic correspondence to harass the
plaintiff. Count III asserts that the defendants intentionally
inflicted emotional distress on the plaintiff through their
harassing methods. Finally, in Count IV, the plaintiff claims that

the defendants violated her right to privacy under the common law. The plaintiff seeks compensatory damages, punitive damages, damages for emotion distress, and attorney's fees.

Currently at issue are the plaintiff's motion to remand and the defendants' motion to compel arbitration and to stay the civil action. ECF Nos. 7 and 5, respectively. Those motions are discussed below.

A. <u>Motion to Remand</u>

In her motion to remand, the plaintiff disputes that the amount in controversy requirement has been satisfied. ECF No. 7. In that motion, the plaintiff asserts that the defendants made "no effort to quantify the value of [her] claim and fail to offer any specific evidence" as to the amount in controversy requirement. Here, the plaintiff refers to two items: (1) the outstanding loan balance of her loans, and (2) the number of phone calls that the defendants made to the plaintiff in violation of the CCPA. Because the defendants only provide conclusions instead of specific evidence of the amount in controversy, the plaintiff believes that this civil action should be remanded.

The defendants then filed a response in opposition. ECF No. 14. In that response, the defendants seek to refute the plaintiff's claims regarding the amount in controversy requirement. The defendants first point to the plaintiff's claims under the CCPA. Based on the number of alleged violations of the CCPA, the

defendants argue that the penalties for those violations would likely exceed $75,000. In addition to those penalties, the defendants note that the plaintiff may recover actual damages and attorney's fees. The defendants next point out that the plaintiff seeks cancellation of her debt, which currently equals $98,256.63. As evidence of that amount, the defendants attached not only an affidavit by a Navient Customer Advocate associated with the plaintiff's loans, but also copies of the plaintiff's loan documents. Based on the amount of damages sought and the evidence provided, the defendants believe that they clearly satisfy the amount in controversy requirement.

The plaintiff then filed her reply. ECF No. 15. In that reply, the plaintiff states that the amount in controversy requirement is determined by the facts and evidence at the time of removal. With that in mind, the plaintiff argues that the defendants failed to provide any specific evidence of the alleged amount of the plaintiff's outstanding student loan balance at the time of removal. Further, the plaintiff believes that the argument concerning "attempted contacts" and the CCPA is insufficient to prove the amount in controversy requirement. Finally, the plaintiff asserts that the defendants failed to offer evidence as to the other damages the plaintiff seeks, and therefore those amounts for other damages should not be considered for jurisdictional purposes.

B. <u>Motion to Compel Arbitration and to Stay the Civil Action</u>

In addition to the plaintiff's motion to remand, the defendants filed a motion to compel arbitration and to stay the civil action. ECF No. 5. In that motion, the defendants first argue that the Federal Arbitration Act ("FAA") governs the parties' arbitration agreements, which are found in each of the student loan agreements. The defendants point out that the plaintiff executed the loan agreements, which each contain the arbitration agreements. Further, under the FAA, the defendants believe that this Court must stay the civil action while the arbitration proceedings continue. Second, the defendants argue that the arbitration clauses are unambiguous as stated in the loan agreements, and that courts almost uniformly enforce such clauses, including West Virginia courts. Therefore, the defendants argue that this Court should grant its motion and thus compel the plaintiff to submit her claims to arbitration.

The plaintiff then filed her response in opposition. ECF No. 9. The plaintiff's primary argument is that the arbitration agreements are unconscionable and thus unenforceable. The plaintiff stresses the "unequal bargaining power" between the two parties. Next, the plaintiff believes that the arbitration agreements are unconscionable because they allegedly abridge the plaintiff's statutory rights and remedies. Regarding those rights and remedies, the plaintiff points to language in the loan agreements that requires the appealing party to pay all costs of any appeal that

may be filed. Because that provision allegedly "strips Plaintiff of her ability to pursue the statutory remedy of attorney's fees and costs when they are the prevailing party," the plaintiff argues that the arbitration agreements are substantively unconscionable and unenforceable. The plaintiff also claims that the arbitration agreements demand prohibitive costs that render the agreements unconscionable. In the alternative, if this Court finds that the arbitration agreements are enforceable, then the plaintiff requests that additional discovery be permitted in order to further determine whether this civil action should be subject to arbitration.

The defendants then filed their reply. ECF No. 13. In that reply, the defendants first argue that arbitration agreements are not contracts of adhesion. Here, they claim that the arbitration clause contained a provision that allowed the plaintiff to reject the arbitration agreements if she responded within 60 days. The defendants point out that the plaintiff did not file a rejection. Next, the defendants reject the plaintiff's argument concerning the abridging of statutory rights. The defendants contend that the arbitration agreements do not prohibit the awarding of attorney's fees. In addition, the defendants argue that even if the arbitration agreements were unconscionable, the promissory notes would still be enforceable. Finally, the defendants believe that additional discovery in this civil action regarding arbitration

would be unnecessary and inconsistent with the goals of arbitration.

For the reasons set forth below, the plaintiff's motion to remand is denied and the defendants' motion to compel arbitration and to stay the civil action is granted.

## II. <u>Applicable Law</u>

A. <u>Removal</u>

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a). However, if federal jurisdiction arises only by virtue of the parties' diverse citizenship, such an action "shall be removable only if none of the . . . defendants is a citizen of the State in which such action is brought." <u>Tomlin v. Office of Law Enforcement Tech. Commercialization, Inc.</u>, 5:07CV42, 2007 WL 1376030, at *1 (N.D. W. Va. May 7, 2007). The party seeking removal bears the burden of establishing federal jurisdiction. <u>See</u> <u>In re Blackwater Security Consulting, LLC</u>, 460 F.3d 576, 583 (4th Cir. 2006); <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir.

1994).  Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand.  Hartley v. CSX Transp., Inc., 187 F.3d 422 (4th Cir. 1999); Mulcahey, 29 F.3d at 151.

Further, the court is limited to a consideration of facts on the record at the time of removal.  See Lowrey v. Alabama Power Co., 483 F.3d 1184, 1213–15 (11th Cir. 2007) ("In assessing whether removal was proper . . . the district court has before it only the limited universe of evidence available when the motion to remand is filed."); O'Brien v. Quicken Loans, Inc., 5:10CV110, 2011 WL 2551163 (N.D. W. Va. June 27, 2011); Marshall v. Kimble, No. 5:10CV127, 2011 WL 43034, at *3 (N.D. W. Va. Jan. 6, 2011) ("The defendant's removal cannot be based on speculation; rather, it must be based on facts as they exist at the time of removal."); Fahnestock v. Cunningham, 5:10CV89, 2011 WL 1831596, at *2 (N.D. W. Va. May 12, 2011) ("The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal.") (internal citations omitted).  Regarding punitive damages, the mere likelihood of punitive damages, without more, does not give rise to federal jurisdiction.  Cunningham, 2011 WL 1831596, at *2 (citing Landmark Corp. v. Apogee Coal Company, 945 F. Supp. 932 (S.D. W. Va. 1996)).

B. Unconscionability

7

West Virginia law provides that "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Brown v. Genesis Healthcare Corp. ("Brown II"), 729 S.E.2d 217, 226 (W. Va. 2012). Analyzing a claim under that doctrine requires an "inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. Pt. 3, Troy Min. Corp. v. Itmann Coal Co., 346 S.E.2d 749 (W. Va. 1986). When assessing a claim of unconscionability, a court "must focus on the relative positions of the parties, the adequacy of the bargaining positions, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." Syl. Pt. 4, Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc., 413 S.E.2d 670 (W. Va. 1991) (internal quotations omitted). The doctrine of unconscionability may be used in attempting to invalidate an arbitration agreement. Brown I, 724 S.E.2d at syl. pt. 9; see Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808, 815 (W. Va. 2012). The application of traditional contract law defenses, such as unconscionability, makes sense, considering that it is a "fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Further, "where a party alleges that the arbitration provision was unconscionable . . . the

question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract." Syl. Pt. 3, State ex rel. Wells v. Matish, 600 S.E.2d 583 (W. Va. 2004).

More specifically, West Virginia law separates a claim of unconscionability into two components: procedural and substantive. Brown II, 729 S.E.2d at 227 (internal citations omitted). A contract term becomes unenforceable if both procedural and substantive unconscionability exist. Id. In assessing whether those two components have been proven, courts "apply a 'sliding scale' in making this determination: the more substantively oppressive a contract term, the less evidence of procedural unconscionability is required" to prove that claim. Id. (internal citations and quotations omitted). Those two components are discussed and analyzed below.

### III. Discussion

As stated earlier, currently at issue are the plaintiff's motion to remand and the defendants' motion to compel arbitration and to stay the civil action.

### A. Motion to Remand

The facts show that the plaintiff is a resident of West Virginia. Defendants Sallie Mae, Inc. and Navient Solutions, Inc. are citizens of Delaware with their principal place of business in

Virginia. Defendants SLM Corporation and Navient Corporation are also citizens of Delaware with their principal place of business located there as well. Thus, the parties are diverse. The only issue in dispute regarding the plaintiff's motion to remand, however, is whether the defendants satisfy the amount in controversy requirement.

Based on the record before this Court, the plaintiff's motion to remand must be denied. As stated earlier, the amount in controversy requirement cannot be based on speculation or "what ifs" that may occur. Rather, the court is limited to a consideration of facts on the record at the time of removal. See Lowrey, 483 F.3d at 1213–15. Speculation regarding the amount in controversy requirement fails to satisfy the burden that the removing party bears. See In re Blackwater Security Consulting, LLC, 460 F.3d at 583. The defendants in this civil action, however, provide more than "what ifs" or simple speculation.

In their response in opposition, the defendants provide both the plaintiff's loan documents and an affidavit of a Navient Customer Advocate who is associated with the plaintiff's loans. Those documents demonstrate that the loan balance at issue, which the plaintiff wants cancelled, is at least $98,000.00 ECF No. 14. That figure alone clearly satisfies the amount in controversy requirement. The plaintiff contends, however, that the defendants did not adequately discuss that amount in their notice of removal.

10

Because they did not provide specific evidence of that loan balance at the time of removal, and because this Court must consider the facts at that time, the plaintiff believes that her motion to remand must be granted. That argument, however, is misplaced.

In <u>Dart Cherokee Basin Operating Company, LLC, et al. v. Owens</u>, the Supreme Court of the United States held that, pursuant to § 28 U.S.C. 1446(a)("§ 1446"), "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S.Ct. 547, 555 (2014). Although a plausible allegation of the amount in controversy may satisfy § 1446, that assumes that the plaintiff does not contest the amount in controversy allegation. If the plaintiff does contest the defendant's plausible allegation, however, removal will be proper "by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional amount." <u>Id.</u> at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B) (2012)). If a "defendant's assertion of the amount in controversy is challenged, . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." <u>Id.</u> at 554.

As a more general matter, the removing party "bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." <u>Lowery</u>, 483 F.3d at 1208; <u>see</u> <u>Ellenburg v. Spartan</u>

11

Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008) ("On a challenge of jurisdictional allegations, [t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.") (internal quotations omitted); Strawn v. AT&T Mobility, L.L.C., 530 F.3d 293, 296-97 (4th Cir. 2008) ("If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter."). Here, the defendants have met that burden.

Pursuant to the above holding in Dart, the defendant at the time of removal did provide a plausible allegation that the loan balance exceeded the amount in controversy requirement. ECF No. 1 *2-3, Ex. A. The plaintiff then contested that claim by filing her motion to remand, which is currently at issue. In response to that motion, the defendants proffered not only an affidavit, but also the plaintiff's loan documents. Those pieces of evidence clearly show that the plaintiff's loan balance exceeds the amount in controversy, and rise well beyond speculative or "what if" conclusions. Further, giving weight to the later-filed loan documents comports with the previous practice where "[c]ourts have observed that the propriety of treating later-filed documents as amendments to a notice of removal depends on the content of the notice of removal and the record as a whole." Carter v. Monsanto

12

Co., 635 F. Supp. 2d 479, 487 (S.D.W. Va. 2009)(citing USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 206 n. 12 (3d Cir.2003); Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir.1963)). That means the defendants, as the removing party, have satisfied their burden.

The defendants' contention as to the CCPA violations also satisfies the amount in controversy requirement. Under the CCPA, if a creditor violates its provisions, then statutory penalties ranging from $100 to $1000 may be awarded.[1] W. Va. Code § 46A-5-101(1). Those amounts may also be adjusted for inflation. Id. at 106. Currently, the maximum amount of those penalties when adjusted for inflation equals $4,737.57 per violation. Id.; see Thomas v. FIA Card Services, Nat. Ass'n, 5:14CV79, 2014 WL 4954389 (N.D.W. Va. Oct. 2, 2014). When a maximum penalty exists as dictated by statute, it is appropriate to measure the amount in controversy by the maximum penalty and not by how much the plaintiff is likely to be awarded. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2009); Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199 (9th Cir. 2008). Furthermore, the plaintiff demands the maximum statutory penalties amount in her complaint. Based on

---

[1]On March 31, 2015, several provisions of the CCPA were amended. One of which is that statutory damages no longer have a minimum of $100, but still retain a maximum of $1,000. However, to this Court's knowledge, it appears that the relevant amendments to the CCPA will not apply until June 2015. See 2015 W. Va. S.B. 542 (West's No. 178).

the maximum, inflation-adjusted penalty amount, and applying that to the sixteen alleged violations of the CCPA, that results in penalties of $75,801.12. That amount, not including the loan balance amount as earlier discussed, exceeds the amount in contr oversy requirement. Therefore, the defendants have satisfied the amount in controversy requirement, and thus the plaintiff's motion to remand must be denied.

B. Motion to Compel Arbitration and to Stay the Civil Action

This Court will now address the second motion at issue, which is the defendants' motion to compel arbitration and to stay the civil action. The defendants argue that the arbitration agreements are unambiguous and are not considered contracts of adhesion. The plaintiff contends that the arbitration agreements are unconscionable and thus unenforceable. Regarding that argument, the plaintiff claims that the arbitration agreements are contracts of adhesion, and that the agreements' fee allocation for appeal costs abridges the plaintiff's statutory rights. In the alternative, the plaintiff requests that if this Court deems the arbitration agreement enforceable, then additional discovery on the matter should be permitted. As stated earlier, West Virginia law separates the doctrine of unconscionability into two components: procedural and substantive. Those two components are discussed below.

1. Procedural Unconscionability

Procedural unconscionability refers to any "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." Brown II, 729 S.E.2d at 227; see Pingley v. Perfection Plus Turbo-Dry, L.L.C., 746 S.E.2d 544, 551 (W. Va. 2013). It requires an examination of certain inadequacies that, when viewed together, "result in a lack of a real and voluntary meeting of the minds of the parties." Pingley, 746 S.E.2d at 551 (quoting Syl. Pt. 17, Brown v. Genesis Healthcare Corp. ("Brown I"), 724 S.E.2d 250 (W. Va. 2011)). Those certain inadequacies include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Pingley, 746 S.E.2d at 551 (quoting Brown I, 724 S.E.2d at syl. pt. 17).

After analyzing the language of the arbitration agreements and the facts, it is clear that those agreements are not procedurally unconscionable. Regarding the sophistication of the parties, it appears that the plaintiff is a legal adult who either pursued or completed a college education.[2] As to the complexity and length of the documents, although the loan documents could be considered

_____

[2]The record before this Court is slightly unclear as to whether the plaintiff actually received her college degree. The facts do show, however, that the plaintiff completed loan applications from January 2008 to November 2011, which corresponds to the time she appeared to attend college.

lengthy, each loan application stated the following on the first page: "I [the plaintiff] have read the Promissory Note accompanying this application and each application Notice to Cosigner and agree to the terms therein." Id. at Ex. A. To the left of that statement, it states in bold, capital letters the following: "CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. I, THE COSIGNER, HAVE READ THE APPLICABLE COSIGNER NOTICE(S)." Id. The plaintiff executed those loan applications, including the all capital-letter provision quoted above. Therefore, the plaintiff confirmed that she reviewed the loan application documents. Regarding the adhesion of the contract, the plaintiff had the right to reject the arbitration agreement. The arbitration agreements, located within the documents for each loan, state the following:

> To the extent permitted under federal law, [the lender] and [the plaintiff] agree that either party may elect to arbitrate - and require the other party arbitrate - any Claim under the following terms and conditions. This Arbitration Agreement is part of the Signature Student Loan Promissory Note ("Note").

> > 1. RIGHT TO REJECT: I [referring to the plaintiff] may reject this Arbitration Agreement by mailing a rejection notice to P.O. Box 147027 Gainesville, FL 32608 within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.

ECF No. 5 Ex. A. That same provision of the arbitration agreements was listed in each loan agreement. Id. at Exs. A-M. The plaintiff did not reject that provision. West Virginia law defines a contract of adhesion as "one drafted and imposed by a party of superior

16

strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it." Brown II, 729 S.E.2d at 228. Simply reading the definition of a contract of adhesion clearly demonstrates that the arbitration agreement at issue does not satisfy that definition. Here, the plaintiff could have rejected the arbitration agreements without also rejecting the loan agreements. Those arbitration agreements do not prevent any alteration to their terms, or place the plaintiff in a situation of either accepting or rejecting the contract in its entirety. Therefore, the inadequacies necessary to prove procedural unconscionability are not present.

    2.    Substantive Unconscionability

    Notwithstanding the lack of procedural unconscionability, this Court will address the second component for a claim of unconscionability. Substantive unconscionability relates to the "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Pingley, 746 S.E.2d at 551 (quoting Brown I, 724 S.E.2d at syl. pt. 19). When assessing substantive unconscionability, the factors that a Court must analyze "vary with the content of the agreement." Pingley, 746 S.E.2d at 551 (internal citations omitted). Therefore, courts should "assess whether a contract provision is substantively unconscionable on a case-by-case basis."

Brown I, 724 S.E.2d at 262. Nonetheless, relevant factors to consider include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Pingley, 746 S.E.2d at 551; see also Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550 (W. Va. 2012); Johnson Controls, Inc., 729 S.E.2d at 808.

Regarding substantive unconscionability, the plaintiff asserts four arguments. First, the plaintiff contends that the arbitration agreement abridges her statutory rights. Here, the plaintiff points to the arbitration agreements' fee allocation for appeals that a party may file of the arbitration award. Regarding costs of arbitration generally, the arbitration agreements state the following:

> Any arbitration hearing that [the plaintiff attends] will take place in a location that is reasonably convenient to [the plaintiff]. [The defendants] will consider (and generally honor) any good faith request to bear the fees charged. Each party must pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration. Despite the foregoing, [the defendants] will pay any fees [the defendants] are required to bear: (1) under applicable law; or (2) in order to enforce this Arbitration Agreement.

ECF No. 5, Ex. A. The arbitration agreements then contain provisions regarding an appeal of the arbitration award by either party. As to the costs associated with any appeal, it states that the "appealing party will pay the Administrator's and arbitrator's costs of the appeal." Id. The plaintiff claims that those

18

provisions mean that she cannot obtain attorney's fees in either the initial arbitration proceeding or on appeal, as permitted under the CCPA, thus allegedly abridging her statutory right to attorney's fees. Therefore, the alleged abridging of her statutory rights for attorney's fees means that the arbitration agreements are unconscionable. Second, the plaintiff claims that although the arbitration agreements permit remedies under applicable substantive law, they still limit statutory remedies under the CCPA. According to the plaintiff, that alleged conflict among the provisions renders the arbitration agreements unconscionable. Third, the plaintiff contends that the arbitration agreements impose unconscionable and prohibitive costs. Finally, the plaintiff believes that the unconscionable arbitration agreements taint all of the loan agreements in their entirety, and thus renders the loan agreements unenforceable.

The plaintiff's arguments, however, do not properly apply the standard for satisfying a claim of unconscionability. Rather, the conduct of the defendants must be analyzed under the applicable standard provided by West Virginia law. Applying the above legal standard, the plaintiff has not sufficiently demonstrated that the arbitration agreements were substantively unconscionable. Regarding commercial reasonableness, the facts do not show any commercially unreasonable terms. The plaintiff received a loan from the defendants to pursue her education. In exchange, the

plaintiff would pay the principal sum plus interest and fees to the defendants. The facts regarding that arbitration agreement display nothing unfair about the transaction and fail to raise concerns as to commercial unreasonableness or a public policy violation. Further, nothing about such an exchange and agreement demonstrates an unfair allocation of risk as to either party.

As stated earlier, the plaintiff appears to argue that the fee arrangement violates the plaintiff's statutory rights under the CCPA. Further, the plaintiff asserts that the arbitration agreements will require the plaintiff to incur costs so excessive that they are substantively unconscionable. The standard for whether terms of a contract are substantively unconscionable is not proven simply by alleged violations of a statute. Rather, the plaintiff needs to demonstrate that the arbitration agreements between the plaintiff and the defendants are overly "one-sided" or unfair, as provided above. As stated earlier, the plaintiff could have rejected the arbitration agreement, including its terms and provisions. The record, however, shows that she did not do so. The plain language of the arbitration agreements require that the plaintiff pay her costs associated with an appeal she may seek of the arbitration award, with the exception that she may be able to request that the defendants pay the appeal costs. Further, the plaintiff only quotes various cases that discusses arbitration costs generally, rather than the specific costs that the plaintiff

will incur as a result of arbitrating this matter. Such unsupported and speculative contentions do not render the arbitration agreements unenforceable. Matish, 600 S.E.2d at 590; see Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). In fact, the Supreme Court of the United States has held that where "a party seeks to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Randolph, 531 U.S. at 92. Finally, courts maintain the power to award attorney's fees and costs for claims under the CCPA. W. Va. Code § 46A-5-104(2014). That awarding of fees, however, is discretionary, not mandatory. Chevy Chase Bank v. McCamant, 512 S.E.2d 217, 227 (W. Va. 1998)("By using the word 'may' in conferring upon courts the power to award attorney's fees, the [West Virginia] Legislature clearly made the granting of [awards of attorney's fees and costs under the CCPA] discretionary."). After reading the language of the arbitration agreements, an award of attorney's fees is not precluded. Rather, that provision discussing appeal costs only relates to the costs of the appeal, not the awarding of attorney's fees. In addition to that distinction, the arbitration agreements discussion of attorney's fees does not explicitly prohibit such an award to the plaintiff. In fact, the arbitration agreement requires the parties to pay for their respective attorney's fees and related costs, but then states that

"[the defendants] will pay any fees [the defendants] are required to bear: (1) under applicable law; or (2) in order to enforce this Arbitration agreement." Therefore, the language of the arbitration agreement does not automatically prohibit the awarding of attorney's fees, and thus does not abridge the plaintiff's right to pursue such fees. Thus, the defendants motion to compel arbitration must be granted. In regards to the plaintiff's alternative request for additional discovery to determine the "arbitrability" of the plaintiff's claim, that request must be denied. Granting the plaintiff's alternative request would hinder, rather than further, "arbitration's goal of 'resolving disputes in a timely and cost efficient manner.'" Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 409 (3d Cir. 2004)(quoting Painewebber, Inc. v. Hofmann, 984 F.2d 1372, 1380 (3d Cir. 1993)).

This Court will also grant the defendants' request that this civil action be stayed while the arbitration proceeds. District courts possess inherent power to stay litigation proceedings. See Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Reed v. Health and Human Services, 774 F.2d 1270, 1277 (4th Cir. 1985) (holding that a district court may defer ruling on a petition for attorneys' fees  pending a final resolution of the merits); see

also <u>Clinton v. Jones</u>, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Based on the above findings and conclusions, this Court believes that this civil action should be stayed.

After reviewing the arguments and facts above, the plaintiff has not proven that the arbitration agreements are substantively unconscionable. Moreover, she did not prove that those agreements were procedurally unconscionable. Therefore, she has not satisfied her burden under West Virginia law. Accordingly, the defendants' motion to compel arbitration and to stay the civil action is granted.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the plaintiff's motion to remand is DENIED, and the defendants' motion to compel arbitration and stay the civil action is GRANTED. Accordingly, this civil action is STAYED. The parties are DIRECTED file a status report by **October 15, 2015**, informing the Court of what has occurred in arbitration and the progress of the parties.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     April 14, 2015


                         /s/ Frederick P. Stamp, Jr.
                         FREDERICK P. STAMP, JR.
                         UNITED STATES DISTRICT JUDGE